Norah Hart, Esq.
305 Broadway, 9th Floor
New York New York 10007
Phone: (212) 897-5865
Fax: (212) 320-0373
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA PIASECKA, | Civil Action No. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| | Jury Trial Demanded |
| RYER AVENUE HOUSING DEVELOPMENT FINANCE CORPORATION, INC. | |
| Defendant. | |

## NATURE OF THE ACTION

This is an action under Age Discrimination in Employment Act, 29 USC§ 621, et. seq., Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, New York State Human Rights Law, N.Y. Executive Law, the New York City Human Rights Law, and wrongful termination to correct unlawful employment practices on the basis of sex, age and national origin. Plaintiff contends that the Defendant treated her unfairly due to her age (57), gender, and national origin (Polish), by making false allegations to justify their unlawful discriminatory conduct, harassing the Plaintiff about her polish accent, fabricating the appearance that Plaintiff was to blame for the chronic endemic problems at the agency, and retaliating against her for asserting her rights.

## JURISDICTION AND VENUE

1)      This Court has jurisdiction pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to 42 U.S.C. § 12117(a), which incorporates by reference §§ 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 §§2000e-5(f)(1) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.  The pendent jurisdiction of the Court, 28 U.S.C. §1367, is invoked over state law causes of action.

2)      The alleged unlawful employment practices were committed within the jurisdiction of the United States District Court for the Southern District of New York.  Venue is proper in this court pursuant to 28 U.S.C. §1391(b).

3)      More than thirty days prior to the institution of this lawsuit, the Plaintiff filed charges with the New York State Division of Human Rights alleging violations of Title VII, *inter alia.*

4)      All conditions precedent have been fulfilled.

## PARTIES

5)      Plaintiff, Barbara Piasecka, is a resident of the County of Kings, State of New York.

6)      Defendant Ryer Avenue HDFC and its subsidiaries are located in Bronx, New York.

7)      At all relevant times, Defendant has been a company doing business in the State of New York and the county of Bronx and has continuously had at least fifteen (15) employees.

## STATEMENT OF FACTS

8)      Defendant, Ryer Avenue HDFC (hereinafter "Ryer"), was created in 1995 to operate low-income housing in Bronx, New York.

9)      Ryer receives over a million dollars annually from the City's Human Resources Administration (hereinafter "HRA").

10)     Plaintiff was employed by Ryer as a bookkeeper from August 1, 2000 to September 23, 2005.

11) Plaintiff left Ryer in 2005.

12) Plaintiff was rehired on January 7, 2010 as Ryer's Fiscal Manager

13) Plaintiff was promoted in 2012 to Fiscal Director.  Plaintiff received a $5,000.00 raise to $55,000.00 annually.

14) Ryer's Executive Director Dorothy Sheahan wrote glowing evaluations of Plaintiff during her years of employment, e.g. "meticulous, accurate, consistently" (2010), "consistently does superior work" (2011), "work ethic and integrity superior" (2015), "extremely conscientious", "on time, stays till the job is done", "needs to correct problems when she sees them", and "meets deadlines and has her own high standards" (2010), scoring 100% and 95%.  (See **EXHIBIT** F, Employee Appraisals)

15) Director Sheahan, who is 86 years old, had come under the influence of her assistant Westlee Morales on or about August of 2014 and promoted Morales to Deputy Executive Director.

16) During 2014 Deputy Director Morales began to "translate" the Plaintiff's english during staff meetings, indicating that the Plaintiff's polish accent was unintelligible, despite the fact that Director Sheahan had been able to understand the Plaintiff's english during all of her prior years of employment at Ryer.

17) Plaintiff contends that, shortly after his promotion, Deputy Director Morales, alongside mocking her polish accent, began falsely accusing her of making statements that she did not make, e.g. denying an employee access to a bathroom.

18) Plaintiff was terminated on March 6, 2015.

19) Director Sheahan wrote a performance appraisal of Plaintiff just weeks before the termination citing, "[Plaintiff's] failure to pay mortgage and employee health insurance payments without knowledge of Ex. Director are examples of poor fiscal judgment…"  (See **EXHIBIT** A, February 1,

2015 Appraisal)

20) In response to the Appraisal, Plaintiff wrote to Director Sheahan, "Delays in submissions of reports are often related to failure by Ryer staff who make purchases to observe guidelines for prior approval and timely submission of invoices for Payment to vendors. Delays in mortgage payments relate to budget issues and inadequate funds on hand.  I have tried to explain these factors and have sought your support to reinforce the need for compliance with financial guidelines…to correct problems….cooperation has declined in the past year or so." (See **EXHIBIT** B, Plaintiff's letter dated February 24, 2015).

## DEFENDANT'S PURPORTED REASON FOR FIRING PLAINTIFF

21) Ryer asserts the chief reason for Plaintiff's termination was a "discovery by [Director] Dorothy Sheahan and Westlee Morales, Ryer Avenue's Deputy Executive Director, in or around November 2013 that Plaintiff had failed to pay Ryer Avenue's mortgage, one of her principal responsibilities"  (See **EXHIBIT** D, page 2, April 11, 2016 Ryer Response to NYSDHR).

22) Plaintiff contends that her termination was unjustified and is a pretext.  Plaintiff states, "This is nonsense, they are trying to defend themselves and grasping for a reason.  They didn't discover [the unpaid mortgage payment], I told them.  The mortgage was late at least half the time.  This was a chronic problem.  I would always remind them that we don't have the money for the mortgage. I told them long before November 2013 that there wasn't enough money to cover the mortgage. Every month, I would submit a report to HASA for our reimbursement of expenses, and when we receive the reimbursements for that month, then I was able to send the mortgage check out.  They knew that.  But the staff didn't provide me with the documentation for their expense, and we didn't get reimbursed.  So the insufficiency accrues.  The reimbursement request to HASA must include

purchase authorizations and invoices, and I was always asking staff for them repeatedly.  I never got those things on time.  Some time around 2013, I found 6 or 7 supports Plaintiff's cojntention that dated in 2008 that were never sent to the mortgagee, the New York State Department of Finance.  I found them in the safe.  I wasn't on staff in 2008 but Ryer would have had to submit a report to HASA expensing those mortgage payments, but the mortgage didn't get paid those months. There was always a balance overdue, $32,434.17 was the monthly mortgage payment, but we were always overdrawn by at least $30k. Ryer was always behind, never paid up." (See **EXHIBIT** C, Plaintiff's June 6, 2016 Surreply to NYSDHR)

23)    Directors Sheahan's and Morales' claim of having been shocked at the "discovery" is not believable unless they were unaware that Plaintiff had not paid Ryer's mortgage.  Plaintiff insists that Director Sheahan and Deputy Director Morales were well aware that Ryer's chronic cash flow problems led to many missed mortgage payments and that evidence in the exclusive possession of Defendant will support her claim.

24)    Plaintiff contends that she did not "fail" to make payments; The payments were not made solely because Ryer had insufficient funds and paid its mortgage and other bills late, indeed mortgage payments were late 25% of the time, sometimes by *years*; because Ryer's spending routinely exceeded its income.

25)    Ryer's contract with HRA provides that HRA will reimburse Ryer's only those expenses that are documented with invoices and receipts; Plaintiff's attempts to get invoices from staff before the submission deadline (the 8th of the month) were not only known to Director Sheahan but deemed by her as lacking patience, "Communication with staff lacked patience when dealing with financial requests, etc." (See **EXHIBIT** A, February 1, 2015 Appraisal)

26)    In 2010, Plaintiff affirms that when she returned to Ryer in 2010 she found seven (7) or

5

eight (8) checks for payment to the mortgage lender during 2008, while Plaintiff was not employed at Ryer, that were never paid.  Plaintiff informed Directors Sheahan and Morales about the outstanding payments and got a "shrugging of shoulders" and Sheahan commented that "there was no funding to make those payments in the first place."

27)     In 2011, HRA initiated an audit of Ryer's financial performance (hereinafter "HRA Audit"). The objective of HRA's Audit were "To determine the accuracy and propriety of the program expenses billed to HRA and whether such expenses were billed in accordance with the agreement." And "To determine whether the rent from clients with income was properly collected and reported as an offset from reimbursable expenditures, as required by the agreement."  (See **EXHIBIT** E, HRA Audit)

28)     The Audit found Ryer lacking with respect to "Documentation of accounting entries, adopt purchasing procedures for all purchases, collection procedures, exert all efforts to collect outstanding revenues (rent?) as quickly as possible, recording expenses." *Ibid.*

29)     Notably the HRA audit does not attribute any of the Ryer shortcomings to the Plaintiff, as Fiscal Director, but deems another Director at Ryer as being "unqualified". *Ibid.*

30)     Plaintiff had often and as early as 2009 advised Director Sheahan and Deputy Morales about the problems cited in the HRA Audit repeatedly.

31)     On April 30, 2014, Plaintiff sent Sheahan a letter alerting her to critical issues affecting Ryer's "bottom line":  The letter began, "I am writing you in regard to the work performance and policy rules of Ryer HDFC that affects my ability to do my job.  I would appreciate your help in making sure that the correct policies and procedures are carried out correctly." (See **EXHIBIT** B, Plaintiff's letter dated February 24, 2015).

32)     Plaintiff cited missing invoices required to support reimbursement to HRA, "I need to

receive invoices as soon as they are received…There are many invoices and correspondence that are missing." And "All purchase orders must be approved by authorized personnel prior to delivery, not after. Many times I am unaware that a purchase has been made and that affects our bottom line." *Ibid.*

33) Plaintiff mentioned staff not cooperating, "I have to explain the procedure many times, but [maintenance staff] continue to disregard my request." And "I have to go over the same issues with certain individuals and it delays my work."  *Ibid.*

34) Plaintiff mentioned rent arrears: "We have several clients who are in rent arrears well over $1,000.00 that needs to be addressed." *Ibid.*

35) Plaintiff mentioned rent collection: "RENT ROLL- The rent receipt book was misplaced and never found.  There were two money orders that were missing from February 2014….There should be only one person collecting rent and money orders stored in a secured place. I have seen money orders in the Clinical mail box unprotected." The Clinical Director was determined to be "unqualified" by HRA in its Audit.  *Ibid.*

36) Defendant dismisses Plaintiff's letter as "clearly written in reaction to the discovery" of missed payments notwithstanding that Plaintiff's letter was sent *before* HRA provided Ryer with the Audit that allefgedly alerted them to the problem.  (See **EXHIBIT** D, page 2, April 11, 2016 Ryer Response to NYSDHR).

37) The HRA Audit cites the same problems Plaintiff cited, e.g. purchasing procedures, collection procedures, outstanding revenues (i.e. rents).  (See **EXHIBIT** B)

38) The HRA Audit cited six (6) late mortgage payments in 2011 and 2012, each was "outstanding" for at least four (4) months, and in October 2011 "outstanding for over 2 years".  (See **EXHIBIT** D, HRA Audit).

39) Ryer's Directors had to have known that its cash flow was insufficient to cover its mortgage. Discovery in the Defendant's possession will show Ryer's requests for permission to dip into operating reserves, pointing to the lack of operating funds, as early as 2012. Despite these facts, Ryer maintains that Plaintiff's "poor fiscal judgment" and its "discovery" of an unpaid mortgage was just cause to fire the Plaintiff.

40) Defendant Directors also claim that Plaintiff took a vacation "without prior approval." (See **EXHIBIT** G, Ryer Response to NYSDHR dated March 10, 2016). Exhibit F shows Plaintiff's vacation request was approved and signed by Director Sheahan two months in advance. (See **EXHIBIT** F, Vacation Approvals).

41) Defendant Directors also claim that an unpaid water bill is one more reason for Plaintiff's termination: "Ryer Avenue was forced to request an advance on its contract from the New York City Human Resources Administration in order to pay the mortgage arrears, as well as the water bill which the [Plaintiff] similarly failed to pay." (See **EXHIBIT** D, April 11, 2016 Ryer Response to NYSDHR).

42) Plaintiff avers that this is also a pretext: "That is ridiculous, I knew and we all knew that we had to send a request to Enterprise for a approval to dip into operating reserves to cover the water bill. I told Westlee the approval needed to be done, he submitted it late to Enterprise, it was his fault. Similarly, we had an electrical issue in August 2013, the power was shutting down and there was no air conditioning in offices or residences, or lights. The request to get it fixed was supposed to be done a long time ago and the super and his assistant informed Westlee about it because it was dangerous….Westlee had to to request the repair order from Enterprise at least two months beforehand and then he has to hire the repairman. The funds had to come out of operating reserves again….I recall Sister Sheahan saying, "The men know better. It's the men, they know better." I

recall we had a conversation in January 2015, Westlee, Sister and I, because I was responsible for preparing a fiscal supplement for fiscal year 2014 and it was was not yet done due to the fact that I could not finish the supplement without the invoices for each bill. Sister blamed me. I asked her, "Sister, how many times have I told you that Westlee is still working on the invoices. Without them it cannot be done."

43)   Plaintiff's frustration with staff's non-compliance was well-known.

44)   Lastly, Ryer backdated evidence in support of its claims. Director Sheahan gave the Employee Appraisal to Plaintiff on February 18, 2015 and it the space for the date was empty. *Post hoc* Ryer filled in the empty space "with February 1, 2015" on the copy provided to the Division of Human Rights.

## DEFENDANT'S FABRICATIONS SUPPORT AN INFERENCE OF DISCRIMINATION

45)   Defendant's purported reasons for terminating the Plaintiff are flatly contradicted by evidence: 1) The "discovery" that Plaintiff "failed to pay" the mortgage despite the agency's chronic insufficiency of funds; 2) That Plaintiff took an "unauthorized vacation" despite a vacation request signed Director Sheahan; 3) The 'discovery' that Plaintiff failed to pay a water bill despite that a request to dip into reserves in order to pay the water bill was submitted by the Deputy Director himself; 4) Dismissing Plaintiff's letter as written in reaction to the "discovery" of missed mortgage and insurance payments, where Plaintiff sent the letter before this alleged "discovery"; 5) Lastly, for reasons that remain unclear, Ryer gave Plaintiff her final appraisal—missing the date--on February 18, 2015, while the copy it provided to NYSDHR was altered *post hoc* and backdated.

46)   The Supreme Court has observed, when a "factfinder's disbelief of the reasons put forward by the defendant . . . is accompanied by a suspicion of mendacity," such circumstances can support

a finding of intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 at 511 (1993); also see *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 147 (noting that, "the trier of fact can infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose".)

## DEFENDANT'S SEXISM AND BIAS AGAINST PLAINTIFF

47)     Plaintiff contends Directors Sheahan and Morales wanted to eliminate her from Ryer's staff and created a pretext to do that.

48)     Plaintiff is a 57 year old white Polish woman.  Deputy Morales mocked Plaintiff's Polish accent, offering to "translate" her speech into proper English during staff meetings. Plaintiff avers that Morales resented her authority over him because she was a woman. Plaintiff complained to Sheahan that she was humiliated by this conduct and felt discriminated against due to having a polish accent.

49)     After Director Sheahan promoted Morales to Deputy Director in August 2014, he repeatedly humiliated Plaintiff about her accent, and replaced her with young Hispanic men like himself.

50)     Deputy Morales is Hispanic and in his 30s.  The two men hired by Morales (Larry Suriel, and Jonathan Braver) are Hispanic men in their 20s.  Plaintiff's qualifications and experience far exceed Larry Suriel's, who was nonetheless hired to replace her, and despite that Suriel had previously worked at Ryer in 2014 as an assistant to Plaintiff and quit without giving any notice.

51)     The effect of the practices complained of above has been to inflict emotional pain, suffering, and inconvenience upon Plaintiff.

52)     The effect of the practices complained of above has been to deprive the plaintiff of equal employment opportunities and to otherwise adversely affect her status as an employee because of

her age, polish nationality, and complaint at discriminatory treatment.

53) The unlawful employment practices complained of above were intentional and done with disregard for the plaintiff's protected rights under 42 U.S.C. §2000e *et seq*.

## COUNT ONE
### (Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e. et seq. )

54) The foregoing paragraphs are realleged and incorporated by reference herein.

55) The Defendant's conduct as alleged at length herein constitutes discrimination based on National origin in violation of Title VII. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

## COUNT TWO
### (Age Discrimination in Violation of the Age Discrimination in Employment Act (ADEA) 29 USC 621)

56) The foregoing paragraphs are realleged and incorporated by reference herein.

57) The Defendant's conduct as alleged above constitutes discrimination based on Age discrimination in violation of ADEA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

## COUNT THREE
### (Reprisal for Engaging in Protected Activities)

58) The foregoing paragraphs are realleged and incorporated by reference herein.

59) The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because she engaged in activities protected by Title VII and the ADEA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's

retaliatory animus.

## COUNT FOUR
### (Hostile and Abusive Working Environment)

60) The foregoing paragraphs are realleged and incorporated by reference herein.

61) The Defendant's conduct as alleged above constitutes hostile and abusive working environment in violation of Title VII and the ADEA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

62) The New York State Division of Human Rights ("NYSDHR") issued a determination letter on June 21, 2016 that found no probable cause for Plaintiff's complaint.

63) More than sixty (60) days have elapsed since the Plaintiff filed her age discrimination claim with NYSDHR.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, its officers, successors, assigns, and all persons in active concert with it, from engaging in employment practices which discriminate on the basis of race, gender, or national origin, and retaliation.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities and which eradicate the effects of Defendant's past and present unlawful employment practices.

C. Order Defendant to make whole the Plaintiff by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to

eradicate the effects of their unlawful employment practices including, but not limited to, front pay.

D.     Order Defendant to make whole the Plaintiff by providing compensation fro past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.     Order Defendant to make whole the Plaintiff by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including pain, suffering and humiliation, in amounts to be determined at trial.

F.     Order Defendant to pay the Plaintiff punitive damages for Defendant's malicious and reckless conduct in amounts to be determined at trial.

G.     Grant such further relief as the Court deems necessary and proper in the public interest.

H.     Award Plaintiff's attorneys its cost of this action.

## JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all questions of fact raised by its complaint.

Dated: August 19, 2016
New York, New York.

Respectfully submitted,

By: Norah Hart, Attorney for Plaintiff
305 Broadway, 9th Floor
New York New York 10007
Phone: (212) 897-5865
Fax: (212) 320-0373
nhart@hart-smart.net